UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SHARON SIPPEL, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 3:10-CV-418 |
| § | |
| MAX L HAGAN, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER CERTIFYING INTERLOCUTORY APPEAL

On March 28, 2013, this Court adopted the Report and Recommendation of Magistrate Judge John R. Froeschner and denied the Motion for Summary Judgment of Defendant Fidelity National Property and Casualty Insurance Company. *See* Docket Entry No. 109. That ruling involved the following controlling question of law on which there is substantial ground for difference of opinion: whether the Fifth Circuit would reconsider the holding of *Campo v. Allstate Insurance Co.,* 562 F.3d 751 (5th Cir. 2009)—that federal law does not preempt state law claims grounded on misrepresentations made by a private insurance company during a plaintiff's initial procurement of coverage under a Standard Flood Insurance Policy (SFIP)—in light of the Federal Emergency Management Agency's (FEMA) subsequent contrary interpretation of the National Flood Insurance Program's (NFIP) preemptive force. For the reasons that follow, the Court certifies for interlocutory appeal this issue, the resolution of which will

1 / 11

materially advance the termination of this lawsuit as well as others raising the same issue.

I. **BACKGROUND**

The following summary of the facts appeared in the magistrate court's Report and Recommendation:

> In 2004, the Plaintiffs were in the market for a beach house when they found one to their liking in Surfside, Texas. The Plaintiffs knew that flood insurance in the general location of the beach house was only available, if at all, through the National Flood Insurance Program (NFIP). They also knew that insurance through the NFIP was not available for any buildings located within the boundaries of the John A. Chafee Coastal Barrier Resources System (CBRS) as determined, exclusively, by the United States Fish & Wildlife Services (FWS). Because the Plaintiffs had no intention of buying a beach house that could not be insured against flood loss, they sought an explicit assurance from Defendant, Clawson Insurance Agency (Clawson), in nearby Angleton, Texas, that the beach house was not within the CBRS and was, therefore, eligible for flood insurance. Clawson assured the Plaintiffs that the property was insurable and the Plaintiffs, based upon that assurance, decided to buy the beach house.
>
> Fidelity is a Write-Your-Own (WYO) program carrier participating in the NFIP. It is authorized to issue a standard flood insurance policy (SFIP) to an eligible property owner under its [] regulatory Arrangement with FEMA and, in that capacity, acts as a fiscal agent of the United States. Clawson had a contractual relationship with Fidelity which permitted Clawson to solicit applications for SFIPs. Clawson placed the Plaintiffs['] flood insurance with Fidelity. Fidelity then issued an SFIP for the beach house effective August 2, 2004.[1] The SFIP was renewed each year and a policy, purporting to

---

[1] Fidelity initially questioned whether the beach house was within the CBRS and the issue persisted until March 5, 2005, when FWS determined the beach house was not within the CBRS "based on a depiction of the subject property location provided by Ms. Louise Clawson in a letter from Clawson Insurance Agency."

> provide flood insurance coverage was in existence when the house suffered minor flood damage during Hurricane Ike on September 13, 2008. Fidelity adjusted the Plaintiffs' claim and on October 24, 2008, it paid the Plaintiffs $859.64.
>
> Apparently, FEMA subsequently reviewed the Plaintiffs['] claim and on April 13, 2009, FEMA requested a new CBRS determination from FWS. On May 11, 2009, FWS, following a thorough examination of, *inter alia*, the official area maps, determined that the Plaintiffs' beach house was, after all, located within the CBRS. On September 25, 2009, after further inquiry by Clawson, FWS reaffirmed its finding. As a result, Fidelity cancelled the Plaintiffs['] policy as void from its inception and returned the Plaintiffs' premiums.

Docket Entry No. 100 at 1–3.

On September 8, 2010, the Plaintiffs sued Clawson, Fidelity, and others in state court alleging breach of contract and numerous extra-contractual state law claims. Because disputes involving an SFIP are governed exclusively by federal law, Fidelity removed the case. The Plaintiffs abandoned their breach-of-contract claim, which was indisputably governed by federal law, and sought a remand. The Court denied the remand motion, adopting a recommendation from the magistrate court to exercise supplemental jurisdiction over the state law claims due to uncertainty concerning the extent of federal preemption in cases such as this one.

Fidelity then sought summary judgment. One of its primary arguments was that federal law preempted Sippel's state law claims. The magistrate court summarized *Campo*'s rejection of a preemption defense for procurement-related claims. It first noted that *Campo* interpreted a FEMA regulation that reads "This

policy and all disputes arising from the handling of any claims under the policy are governed exclusively by" FEMA regulations, 44 C.F.R. Pt. 61, App. A(1), Art. IX, to mean that FEMA "expressly preempted state law only as to handling-related claims." Docket Entry No. 100 at 3 (quoting *Campo*, 562 F.3d at 757 & n.38). Second, it found that permitting the prosecution of procurement-related state law claims against a WYO company would not impede the congressional purposes and objectives of the NFIP because "FEMA does not reimburse carriers for procurement-related judgments." *Id.* (quoting *Campo*, 562 F.3d at 758).

The magistrate court then discussed post-*Campo* developments that question its holding. Most significantly, in a July 2009 WYO Program Bulletin, FEMA disagreed with *Campo*'s interpretation of its authority. FEMA's acting Federal Insurance Administrator issued a "Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy," which declared that:

> FEMA previously understood and intended its regulations to preempt state law claims related to policy formation. . . . FEMA understood and intended preemption to apply, particularly where there is a conflict with a Federal regulation on the manner in which policies were administered, and also had expressly preempted state law related to claims handling. . . .
>
> . . . .
>
> . . . FEMA will review its regulations to determine whether clarification is required to fully implement its intended scope of preemption.

Docket Entry No. 74-4 at 29–30. The Tenth Circuit rejected the reasoning in *Campo*, in part because of the FEMA bulletin. *See Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403, 408 n.3 (10th Cir. 2012); *see also Moffett v. Computer Scis. Corp.*, 457 F. Supp. 2d 571, 587 (D. Md. 2006). Despite these developments, the magistrate court concluded that *Campo* was binding on a trial court in the Fifth Circuit. This Court agreed and adopted the recommendation that summary judgment should be denied.

The magistrate court made another recommendation: that this Court should certify for interlocutory appeal the question whether FEMA's post-*Campo* interpretation of its authority warranted reconsideration of *Campo*. It is that certification question to which the Court now turns.

## II. STANDARD FOR CERTIFICATION OF INTERLOCUTORY APPEALS

The procedure allowing certification of interlocutory appeals in limited circumstances "inject[s] an element of flexibility into the technical rules of appellate jurisdiction established for final-judgment appeals under § 1291 and for interlocutory appeals under § 1292(a)." 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012). Section 1292(b) is intended to "minimize[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Id.* But such appeals "represent a rarely used exception to the strong judicial policy

disfavoring piecemeal appeals." *In re L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992, 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998) (citing *Clark–Dietz & Assocs.–Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1993)).

Certification of an interlocutory appeal under section 1292(b) is only appropriate when: (1) the order from which the appeal is taken involves a "controlling question of law"; (2) there is a "substantial ground for difference of opinion" concerning the issue; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The decision to permit such an appeal is within the district court's sound discretion. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). Even if the district court certifies a section 1292(b) appeal, the court of appeals must determine that the certification requirements of the statute have been met. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc).

### A. Controlling Question of Law

The first requirement is easily satisfied. The question whether Sippel's state law claims are preempted is a controlling question of law. If preempted, such claims are subject to dismissal. *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) ("At one end of the continuum, courts have found issues to be controlling, 'if reversal of the district court's opinion would result in dismissal

of the action.'" (quoting *Strougo v. Scudder, Stevens & Clark, Inc.*, No. 96 CIV. 2136(RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug. 18, 1997)).

### B. Substantial Ground for Difference of Opinion

On that controlling preemption question, substantial ground for difference of opinion exists at the circuit level.  This Court was bound to apply *Campo*. Ordinarily, that would also be true of a Fifth Circuit panel.  *See Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991) (noting that an appellate "panel may not overrule the decision, right or wrong, of a prior panel in the absence of en banc reconsideration or superseding decision of the Supreme Court" (internal citations and punctuation omitted)).  But a court of appeals may reconsider its earlier interpretation of an ambiguous provision of federal law in light of a subsequent agency interpretation.  *See Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–86 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").[2]

---

[2] And the Supreme Court recently affirmed the Fifth Circuit's view that an agency's interpretation concerning the scope of its own jurisdiction is entitled to *Chevron* deference.  *See City of Arlington v. FCC*, 133 S. Ct. 1863 (2013).  This Court delayed consideration of the certification question until the *City of Arlington* ruling.

It does not, however, follow directly from *Brand X* that a Fifth Circuit panel could reconsider *Campo*. *Brand X* involved an agency regulation issued subsequent to the judicial decision. *Brand X*, 545 U.S. at 977–79. FEMA's post-*Campo* interpretation appears in a bulletin, and though it contemplates promulgation of a regulation to address *Campo*, *see* Docket Entry No. 74-4 at 29–30, such a regulation has not yet issued. The informal interpretation contained in FEMA's bulletin is thus not entitled to the *Chevron* deference at play in *Brand X*. It may be entitled only to the lesser *Skidmore* deference that depends "upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). On the other hand, it may be entitled to the more substantial deference afforded under *Auer v. Robbins*, 519 U.S. 452 (1997), because the July 2009 bulletin was interpreting FEMA's own regulation. *But see Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1338 (2013) (Roberts, J., concurring) (noting a desire to reconsider *Auer* deference, but declining to do so because the issue was not adequately briefed); *id.* at 1339–42 (Scalia, J., concurring in part and dissenting in part) (criticizing *Auer* deference as having "no principled basis" and contravening "one of the great rules of separation of powers: He who writes a law must not adjudge its violation"). But whether FEMA's informal interpretation fits within the

*Skidmore* or *Auer* box, the question remains whether its post-*Campo* pronouncement allows a subsequent Fifth Circuit panel to reconsider the preemption issue.

This uncertainty concerning whether an informal agency interpretation like the July 2009 FEMA bulletin allows a court of appeals to reconsider its earlier interpretation of agency authority reinforces that a "substantial ground for difference of opinion" exists. 28 U.S.C. § 1292(b). Moreover, the Fifth Circuit has already relied on FEMA's July 2009 interpretation in one post-*Campo* opinion. *See Grissom v. Liberty Mut. Ins. Co.*, 678 F.3d 397, 401 n.2 (5th Cir. 2012).[3] Certification would allow the court of appeals to consider whether that same FEMA interpretation warrants reconsidering *Campo*.

### C. Materially Advance the Ultimate Termination of Litigation

Resolution of this issue would substantially advance the termination of this litigation. As discussed above, if *Campo* is reconsidered and reversed, Fidelity would be entitled to summary judgment on the remaining state law claims. In addition, interlocutory review of this issue is likely to materially advance the termination of numerous other cases raising state law claims related to the procurement of SFIPs. At least three other cases are pending in the Galveston

---

[3] *Grissom* held that the "renewal" of an SFIP is not the "procurement" of insurance. 678 F.3d at 401. It quoted the language in the July 2009 bulletin stating that FEMA's regulations preempt "state law claims related to policy formation, *renewal, and administration arising from allegations of WYO company error.*" *Id.* at 401 n.2 (emphasis in original) (citation omitted).

9 / 11

Division involving the question of federal preemption of procurement-related claims. Each involves structures found to be ineligible for flood coverage after Hurricane Ike when they were discovered to be located within the CBRS. And, given the frequency of hurricanes in this circuit, these are not likely to be the last such cases. Nationwide, the CBRS includes 585 land units totaling nearly 1.3 million acres of land, including many along the Gulf Coast. Certification of the preemption issue is thus likely to facilitate resolution not just of this case, but the many others in which this issue recurs.

## III.  CONCLUSION

For these reasons, pursuant to 28 U.S.C. § 1292(b), the Court certifies the following, admittedly lengthy, question for interlocutory appeal:

> Whether the holding in *Campo v. Allstate Insurance Co.,* 562 F.3d 751 (5th Cir. 2009)—that federal law does not preempt state law claims grounded on misrepresentations made by a private insurance company during a plaintiff's initial procurement of coverage under a Standard Flood Insurance Policy—remains good law in light of the FEMA's subsequent contrary interpretation of the National Flood Insurance Program's preemptive force.

Pursuant to 28 U.S.C. § 1292(b), within ten days of the issuance of this Order, Fidelity shall file an application in the Court of Appeals seeking certification from that court.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of July, 2013.

_____
Gregg Costa
United States District Judge